Billy Joe CLEGG, Appellant,

v.

The OKLAHOMA STATE ELECTION BOARD, and Lee Slater, as Secretary for the State Election Board, Appellees.

No. 55388.

Supreme Court of Oklahoma.

Nov. 17, 1981.

---

**29.** 73 C.J.S., Public Utilities, § 41(4), p. 1087, et seq.

Billy Joe Clegg, pro se.

Jan Eric Cartwright, Atty. Gen. and Brent S. Haynie, Asst. Atty. Gen., Oklahoma City, for appellees.

HODGES, Justice.

The issue presented is whether Billy Joe Clegg, appellant, an unsuccessful candidate for the office of Governor in the 1978 Oklahoma elections, is entitled to a refund of the filing fee which he was required to post with his declaration of candidacy pursuant to 26 O.S.Supp.1978 § 5–112.[1]

---

1. It is provided by 26 O.S.Supp.1978 § 5–112:

A Declaration of Candidacy must be accompanied by a petition supporting a candidate's filing signed by five percent (5%) of the registered voters eligible to vote for a candidate in the first election wherein the candidate's name could appear on the ballot, as reflected by the latest January 15 registration report; or by a cashier's check or certified check in the amount of Two Hundred Dollars ($200.00) for candidates filing with the Secretary of the State Election Board, or in the amount of Fifty Dollars ($50.00) for candidates filing with the secretary of a county election board; provided, however, such cashier's check or certified check shall be in the amount of One Thousand Five Hundred Dollars ($1,500.00) for candidates for Governor, One Thousand Dollars ($1,000.00) for candidates for United States Senator and Seven Hundred Fifty Dollars

In July of 1978, Clegg filed his declaration of candidacy with the State Election Board [Board], accompanied by a filing fee of $1,500. Clegg's name did not appear on the ballots in the primary or runoff primary election. His name, and the names of two other independent candidates for governor, appeared on the general election ballot. Clegg received 3,887 votes from a total of 777,414 votes cast in the gubernatorial election. After the election, Clegg requested a refund of his filing fee which the Board denied. An action was filed in the Oklahoma County District Court and summary judgment was entered in favor of the Board.

Clegg asserts that the actions of the Board and its construction of 26 O.S.Supp. 1975 § 6–102[2] and 26 O.S.Supp.1974 § 5–113:[2A] violated his fourteenth amendment right to equal protection because it penalizes some candidates in order to defray the expenses of others; that the establishment of classification categories fails to serve a legitimate state interest; and the Board's refusal to place his name on a primary ballot placed him in the equivalent position of an unopposed political party candidate.

The Board counters with the argument that pursuant to 26 O.S.Supp.1974 § 5–113, a candidate is entitled to receive a refund of the filing fee if 1) the candidate is unopposed in the primary election; 2) the candidate becomes a candidate in a run-off primary election; or 3) the candidate receives

more than 15% of the votes cast for the office for which he was a candidate at the first election in which his/her name appears on the ballot. The Board argues that Clegg was not a candidate in the primary election or the run-off primary, and that he did not receive 15% of the votes cast in the general election. The Board also contends that Clegg was not denied equal protection of the law.

**I**

■ The Fourteenth Amendment does not require that equal protection be measured by exact equality of classification[3] or identity of treatment. Classifications of invidious discrimination which are arbitrary, irrational and not reasonably related to a legitimate state purpose are forbidden.[4] Discrimination is a failure to treat all persons equally where no reasonable distinction can be found between those favored and those unfavored. Equal protection based on classifications requires that the classification rest on real and not feigned differences; the distinction have some relevance to the purpose for which the classification is made; and the different treatments are not completely disparately arbitrary.[5]

There are two standard tests which are used to review classifications in cases involving the equal protection clause. The conventional standard requires that distinctions drawn by a challenged statute bear

($750.00) for candidates for the United States Congress, and Five Hundred Dollars ($500.00) for candidates for Lieutenant Governor, Corporation Commission, Attorney General, State Auditor and Inspector, State Superintendent of Public Instruction, State Treasurer and Commissioner of Insurance.

**2.** It is provided by 26 O.S.Supp.1975 § 6–102:
Any candidate who is unopposed in any election shall be deemed to have been nominated or elected, as the case may be, and his name will not appear on the ballot at any election in which he is so unopposed.

**2A.** Refund conditions are delineated by 26 O.S. Supp.1974 § 5–113:
Said check shall be forfeited to the election board with which it was filed and proceeds therefrom shall be used by said board to defray election expenses unless the candidate is unopposed in the Primary Election, becomes a can-

didate in the Runoff Primary Election or receives more than fifteen percent (15%) of the votes cast for the office for which he is a candidate at the first election wherein his name appears on a ballot, in which case said check shall be returned to the candidate immediately.

**3.** *Norvell v. Illinois*, 373 U.S. 420, 423, 83 S.Ct. 1366, 1368, 10 L.Ed.2d 456 (1963).

**4.** *McLaughlin v. Florida*, 379 U.S. 184, 191, 85 S.Ct. 283, 287, 13 L.Ed.2d 222 (1964); *Ferguson v. Shrupa*, 372 U.S. 726, 732, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93 (1963).

**5.** *Walters v. City of St. Louis*, 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660 (1954); *Kirk v. Bd. of Co. Comm'rs.*, 595 P.2d 1334, 1337 (Okl.1979).

some rational relationship to a conceivable legitimate state purpose. Under this examination, if a classification does not permit one to exercise the privilege while refusing it to another of like qualifications, under similar conditions and circumstances, it is unobjectionable. A classification is constitutional if there is a reasonable classification and reasonable opportunity for uniform imposition on the class created.[6]

The more stringent test of strict scrutiny is applied in cases which involve fundamental interests. Under this critical standard, the state bears the burden of establishing, not only that it has a compelling interest which justifies the statute, but that the classifications established are necessary to effectuate its purpose.[7] Every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review under the equal protection clause of the Fourteenth Amendment. However, the direct impact of filing fees is felt by the candidates for office, rather than the voters. If the filing fee requirement is of an amount that most candidates could be expected to pay from their own resources, or through modest contributions, and if other means of reasonable and alternative access to the ballot are provided, the existence of the fee does not of itself compel close scrutiny,[8] and it may be sustained if it can be shown to have some rational basis.

The state has a legitimate interest in regulating the number of candidates on the ballot to prevent the clogging of its election procedures to avoid voter confusion; and to prevent the integrity of its political processes from frivolous or fraudulent candidates. Rational results within the framework of our system cannot be reached if the ballot for the office of governor must list a dozen or more candidates who have no prospects of success.[9] The regulation of the ballot must be balanced by a means which does not unfairly or unnecessarily burden either a minority party's or an individual's interest in the continued availability of political opportunity. The Legislature may adopt reasonable measures to regulate the number of candidates on the ballot to prevent an indiscriminate scramble for offices and wholesale filing of petitions for candidacy.[10]

Notwithstanding that one purpose of 26 O.S.Supp.1974 § 5–113, is to provide that proceeds from the filing fees shall be used to defray election expenses, this Court has acknowledged that the filing fee also tests the seriousness of the candidate and that the State has a legitimate interest in regulating the number of candidates on the ballot.[11] The requirement of § 5–112 which requires the submission of a voter petition or a filing fee is applicable uniformly and equally to all candidates for elective office whether they are members of an organized political party or an independent candidate. We find that the conditions placed upon the refund by § 5–113 are reasonable and constitute a valid exercise of state authority to regulate and preserve the electoral process.

6.  *Shapiro v. Thompson*, 394 U.S. 618, 638, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600, 617 (1969); *Sherbert v. Verner*, 374 U.S. 398, 406, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963); *Skinner v. Okla.*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942).

7.  *Thayer v. Phillips Petroleum Co.*, 613 P.2d 1041, 1044–45 (Okl.1980).

8.  *Lubin v. Panish*, 415 U.S. 709, 715, 94 S.Ct. 1315, 1319, 39 L.Ed.2d 702, 708 (1974); *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 855, 31 L.Ed.2d 92, 99 (1972); *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). The Oklahoma statute, 26 O.S.Supp.1978 § 5–112, provides for ballot access by filing a petition in support of the candidacy comprised of 5% of the voters eligible to vote in the first election in which the candidate's name would appear on the ballot.

9.  *Lubin v. Panish, supra; Bullock v. Carter, supra.* See also: Annot., "Validity And Effect Of Statutes Exacting Filing Fees From Candidates For Public Office," 89 A.L.R.2d 864, 872 (1963).

10.  *McCarthy v. Slater*, 553 P.2d 489, 491 (Okl. 1976); *State v. Scott*, 99 Minn. 145, 108 N.W. 828 (1906).

11.  *Burns v. Slater*, 559 P.2d 428, 429 (Okl. 1975); cert. den'd 422 U.S. 1046, 95 S.Ct. 2663, 45 L.Ed.2d 699 (1975); *McCarthy v. Slater, supra.*

## II

Clegg asserts that because he was unopposed in the primary election held August 22, 1978, he should recover his filing fee under the provisions of § 5–113 and § 6–102. Section 5–113 provides that a candidate is entitled to the return of his filing fee if he is unopposed in the primary election; section 6–102 states that any candidate who is unopposed in any election shall be deemed to have been nominated and, therefore, his name will not appear on the ballot at any election in which he/she is unopposed.

Primary elections are conducted for the sole purpose of permitting recognized political parties to nominate candidates for offices to be filled at the general election.[12] Clegg, who sought access to the gubernatorial ballot as an independent was not a candidate, unopposed or otherwise in the primary election; nor was he eligible to participate as a candidate in the primary election. Clegg sought to be elected as an independent candidate and was not seeking the nomination of a political party. His candidacy did not fall within the parameters of §§ 5–113 or 6–102. An independent candidate is not a candidate of a recognized political party, rather it is a designation which indicates the lack of affiliation with a political party.[13] The statutory right of an independent candidate is granted by § 1–102, which provides that the names of nonpartisan candidates appear on the general election ballot. The nomination of nonpartisan or independent candidates at primary elections is not authorized either by § 1–102 or by the Okla.Const. art. 3 § 3.[14] A nonpartisan candidate exercises his/her right to run for office independently from the primary nomination process. The independent candidate is not eligible for nomination through primary election; rather, the names of all independent candidates for an elective office appear only on the general election ballot.[15]

■ Clegg failed to meet the statutory requirements for a refund. Clegg was not unopposed in the primary election nor was he qualified to be a candidate in the primary election. Clegg was not in the runoff primary and because he contends he was unopposed in the primary, by his own admission he is unqualified to receive a refund on this basis. He failed to receive 15% of the votes cast in the gubernatorial election for governor. None of the provisions for a refund were met.

AFFIRMED.

IRWIN, C. J., BARNES, V. C. J., and LAVENDER, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

---

**12.** It is provided by 26 O.S.Supp.1977 § 1–102:

A Primary Election shall be held on the fourth Tuesday in August of each even-numbered year, at which time each political party recognized by the laws of Oklahoma shall nominate its candidates for the offices to be filled at the next succeeding General Election, unless otherwise provided by law. No candidate's name shall be printed upon the General Election ballot unless said candidate shall have been nominated as herein provided, unless otherwise provided by law; provided further that this provision shall not exclude the right of a nonpartisan candidate to have his name printed upon said General Election Ballots. No county, municipality or school district shall schedule an election on any date during the twenty (20) days immediately preceding the date of any such primary election.

**13.** *McCarthy v. Slater, supra*, p. 492.

**14.** It is provided by Okla.Const. art. 3, § 3:

The Legislature may enact laws providing for a mandatory primary system which shall provide for the nomination of all candidates in all elections for federal, state, county and municipal offices, for all political parties, except for the office of Presidential Elector, the candidates for which shall be nominated by the recognized political parties at their conventions. The Legislature also shall enact laws providing that citizens may, by petition, place on the ballot the names of independent, non-partisan candidates for office, including the office of Presidential Elector.

**15.** The manner of printing ballots is mandated by 26 O.S.Supp.1976 § 6–106, which provides in pertinent part:

The official ballot for the General Election shall be printed so that the nominees of the various political parties and nonpartisan candidates will appear in columns, a column being given to the nominees of each party, and a column being given to nonpartisan candidates.