Judith CHILDS, Executrix of the Estate of John Childs, Deceased, Plaintiff–Appellant,

v.

STATE of Oklahoma, ex. rel. OKLAHOMA STATE UNIVERSITY, Defendant–Appellee.

Randy HOOD, Plaintiff–Appellant,

v.

STATE of Oklahoma, ex. rel. OKLAHOMA STATE UNIVERSITY, Defendant–Appellee.

Nos. 77583, 77584.

Supreme Court of Oklahoma.

March 9, 1993.

Luke Motley, IV, Roger D. Sanders, and Samuel W. Graber, Sanders & Mumm, P.C., Sherman, TX, for appellants, Judith Childs and Randy Hood.

Susan B. Loving, Atty. Gen. and Jeff Mixon, Asst. Atty. Gen., Oklahoma City, for appellee, State of Okl.

OPALA, Justice.

The dispositive issue for review is whether the amended provisions of 51 O.S.Supp. 1988 § 155(14) of the Governmental Tort Claims Act [Tort Claims Act][1] extended the State's immunity to include its liability to persons, not then in the employ of the State of Oklahoma, who *were covered for the injurious event in suit by the workers' compensation regime of any state.* We answer in the affirmative.

I

THE ANATOMY OF LITIGATION

In 1989 John Childs and Randy Hood [Childs and Hood], both Texas residents, were in Oklahoma while in the course of their employment with the same private employer. The men were traveling together in a car driven by Childs when they collided with a vehicle owned by the State of Oklahoma [State] and operated by a State employee. Childs was killed in the accident and Hood received bodily injury.

Hood and Child's widow [together called plaintiffs] received benefits under the provisions of Texas workers' compensation law.[2] Relying on the Governmental Tort

---

**1.** The pertinent terms of 51 O.S.Supp.1988 § 155(14) are:

"The state or a political subdivision shall not be liable if a loss or claim results from:

. . .

(14) Any loss to any person covered by any workers' compensation act or any employer's liability act:. . ."

Subdivision 14 was not affected by the 1991 amendment of § 155 (Okl.Sess.L.1991, Ch. 55, § 2, eff. Sept. 1, 1991).

**2.** Tex.Rev.Civ.Stat.Ann. art. 8308–4.01 et seq. (West 1989). Injury sustained in a business trip can be the basis for recovery under Texas compensation laws. Tex.Rev.Civ.Stat.Ann. art. 8309, § 1b (West 1989), provides that ". . . [t]ravel by an employee in the furtherance of the affairs or

business of his employer shall not be the basis for a claim . . ., unless the trip . . . would have been made even had there been no personal or private affairs of the employee . . ., and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip." The Texas scheme also provides that while compensation benefits will be the exclusive remedy against employers [Tex.Rev.Civ.Stat.Ann. art 8308–4.01(a) ], *the act does not in any way extinguish a plaintiff's remedies against third parties.* Tex.Rev.Civ.Stat.Ann. art. 8308–4.01(a) spells out that ". . . a recovery of workers' compensation benefits under this Act is the exclusive remedy of an employee or legal beneficiary against the employer . . . for the death of or a work-related injury sustained by a covered employee." Tex.Rev.Civ.Stat.Ann. art. 8306 § 3 provides in part that ". . . [n]o part

Claims Act,[3] the plaintiffs brought separate actions against the State for the wrongful death of Childs and for bodily injury to Hood. The State, acknowledging its employee's negligence,[4] invoked the immunity of § 155(14) [Subdiv. 14].[5] The trial court's summary judgment for the State in both cases rests on the Subdiv. 14 immunity of the State from responsibility for *"any loss to any person covered by any workers' compensation act."*[6] The plaintiffs brought separate appeals which stand consolidated for disposition by a single opinion.

## II

SUBDIV. 14'S THIRD AMENDMENT OF 1988 CLEARLY WAS INTENDED TO IMMUNIZE THE STATE FROM LIABILITY FOR WRONGFUL DEATH OF, OR BODILY INJURY TO, PERSONS COVERED BY THE WORKERS' COMPENSATION REGIME OF ANY STATE

Relying on Subdiv. 14's third amended text of 1988 vintage,[7] the State asserts that it is immunized from liability if a nongovernmental employee's claim or loss results from an injury that is covered by the compensation law of *any* state. Because the plaintiffs received benefits under the compensation law of Texas, the State argues, both claims are barred by Subdiv. 14.

The Legislature has enacted three consecutive versions of Subdiv. 14, the most recent in 1988. *This court has construed the first two of these; the third is before us today.* The issue pressed by the plaintiffs calls for an examination of the 1988 amendment in light of Subdiv. 14's legislative history and of our extant jurisprudence that construes the earlier versions in the factual context of decided cases.

## A.

*Subdiv. 14—Its First–Generation Text and Meaning*

■ *Jarvis v. City of Stillwater*[8] held that the text of 51 O.S.1981 § 155(14)[9] did not confer upon the State immunity for harm to nongovernmental employees. There, a private company's employee was injured when he came in contact with high-voltage lines owned and maintained by the City of Stillwater [City]. After receiving compensation benefits from his employer, the employee sued the City for negligence under the Political Subdivisions Tort Claims Act [Act].[10] The 1981 version provided that a political subdivision shall not be liable "if a loss results from ... *[a]ny claim* covered by the Oklahoma Workers' Compensation Act...."[11] We held that in that context the Subdiv. 14 immunity extended *solely* to tort liability pressed by *political subdivision employees* covered

---

of this Section is intended to lessen or alter the employees [sic] existing rights or cause of action either against his employer, its subscriber, or any third party."

**3.** 51 O.S.Supp.1988 §§ 151 et seq.

**4.** In No. 77,583 (Childs), the State conceded in the pretrial conference order its employee's "negligence, causation, nature and extent of injuries" and that the plaintiff's damages "are in excess of $100,000.00." In No. 77,584 (Hood), the State acknowledged its employee's negligence, but refused to admit the nature and extent of the plaintiff's injury.

**5.** For Subdiv. 14 immunity, see 51 O.S.Supp. 1988 § 155(14), *supra* note 1.

**6.** 51 O.S.Supp.1988 § 155(14) (emphasis added), *supra* note 1.

**7.** For the text of 51 O.S.Supp.1988 § 155(14), see *supra* note 1.

**8.** Okl., 669 P.2d 1108 (1983).

**9.** 51 O.S.1981 § 155(14) of the Political Subdivisions Tort Claims Act. The terms of Subdiv. 14 provided:
"A political subdivision or an employee acting within the scope of his employment shall not be liable if a *loss results from:*
...
14. *Any claim covered by the Oklahoma Workers' Compensation Act* or any claim covered by the Oklahoma Unemployment Compensation Act."
For the 1984 version of § 155(14) see Part IIB, *infra;* for the 1988 version see *supra* note 1.

**10.** 51 O.S.1981 §§ 151 et seq.

**11.** 51 O.S.1981 § 155(14) (emphasis added), *supra* note 9.

by the workers' compensation regime.[12] The version of Subdiv. 14 construed in *Jarvis* came to be amended with the repeal of the 1981 Act and its replacement in 1984 by the post-*Vanderpool*[13] passage of the Governmental Tort Claims Act [Tort Claims Act].[14]

### B.

### *Subdiv. 14—Its Second–Generation Text and Meaning*

In *Huff v. State*[15] we examined the 1984 amendment of Subdiv. 14. It provided that the State "shall not be liable if a loss ... results from ... *[a]ny claim* covered by any workers' compensation act...."[16] There, an Oklahoma Highway Patrol car struck and killed Huff as he walked upon a marked crosswalk. He was then in the course of his employment with a private company. We held that under the 1984 version of Subdiv. 14 the State was *not* immune from tort liability to a nonstate employee injured on the job.[17] Since the *Jarvis-* and *Huff*-tested versions of § 155(14) did not substantially differ from one another, we could divine no legislative intent to enlarge the earlier version's immunity. The language of the 1984 text fell

short of including a nongovernmental worker within the orbit of State immunity.

In sum, our pre–1988 jurisprudence teaches that the Subdiv. 14 immunity *applied only* to claims by governmental employees and its scope stood confined to that afforded by the exclusivity provisions of the Workers' Compensation Act, 85 O.S.Supp.1984 § 12.[18]

### C.

### *Subdiv. 14—Its Third–Generation Text Before Us Today*

■ Subdiv. 14 was *last* amended in 1988. Its terms provide that neither the State nor a political subdivision shall be liable "if a loss or claim results from ... *[a]ny loss to any person* covered by *any workers' compensation act* or any employer's liability act...."[19]

The State argues that (1) the 1988 version clearly demonstrates legislative intent to expand the class of claimants under legal disability to recover against the State and (2) all nongovernmental employees covered by the compensation laws of any state are now within the disabled class. This is so because the Legislature replaced the phrase "any claim" found in the earlier text with the phrase "any loss to any per-

---

**12.** The 1981 version of § 155(14), which became effective on the day universal compensation coverage came to be extended to municipal workers, was viewed as legislative reaffirmation that exclusivity of the compensation regime was to govern *all* covered city employees and as a declaration that compensation's exclusivity constituted a bar to the newly-created tort remedy for harm occasioned by a political subdivision both in its governmental as well as in its proprietary capacity.

**13.** In *Vanderpool v. State*, Okl., 672 P.2d 1153, 1156–1157 (1983), we abrogated the doctrine of sovereign immunity and invited the legislature to enact a comprehensive tort liability act that would address the immunity of the State (*sovereign*) and of its political subdivisions (*governmental* entities).

**14.** 51 O.S.Supp.1984 §§ 151 et seq.

**15.** Okl., 764 P.2d 183 (1988).

**16.** 51 O.S.Supp.1984 § 155(14) (emphasis added).

**17.** *See in this connection Ingram v. State*, Okl., 786 P.2d 77 (1990). There, husband and wife

sued the State for bodily injuries sustained by the wife in a mass shooting incident. Before the mandate had issued in *Huff, supra* note 15, the trial court concluded that the provisions of 51 O.S.Supp.1984 § 155(14) immunized the State from legal responsibility for the injurious episode. On appeal, the State *conceded* that the trial judge's decision came to be rested on an erroneous interpretation of § 155(14). *Id.* at 79.

**18.** The pertinent terms of 85 O.S.Supp.1984 § 12 are:

"*The liability* prescribed in Section 11 of this title *shall be exclusive and in place of all other liability of the employer and any of his employees* ... for such injury, loss of services, or death, to the employee, or the spouse, personal representative, parents, or dependents of the employee, or any other person...." (Emphasis added.)

**19.** 51 O.S.Supp.1988 § 155(14) (emphasis added), *supra* note 1. The quoted portions of § 155(14) were not changed by the 1991 amendment (Okl.Sess.L.1991, Ch. 55, § 2, eff. Sept. 1, 1991).

son." Support for this view, the State asserts, is extracted from *Huff*, which gave a clear signal to the Legislature that it must use certain language in order to immunize the State from liability for claims brought by *any* nongovernmental employee covered under the compensation regime of any state. The State directs our attention to a passage in *Huff* that the 1981 version of § 155(14) was "devoid of any *explicit* language immunizing political subdivisions from liability for claims brought by '*any person*' whose injury or death was covered by our compensation laws." [20] We are urged *that the Legislature adopted the exact language suggested by Huff as necessary to make the Subdiv. 14 immunity all-inclusive.* [21]

We agree that the language added by the 1988 amendment—"*any loss to any person covered by any workers' compensation act*" [22]—clearly demonstrates an intent to extend the State's Subdiv. 14 immunity to embrace *claims by all nongovernmental employees covered for the injurious event by the workers' compensation regime of any state.*

### III

### THE 1988 TEXT OF SUBDIV. 14 PASSES CONSTITUTIONAL MUSTER

Plaintiffs assert that if the trial court's construction of § 155(14) were accepted as correct, Subdiv. 14 would become offensive to the Interstate Commerce,[23] as well as to the Due Process,[24] Equal Protection,[25] and Full Faith and Credit Clauses [26] of the U.S. Constitution.

■ We recognize at the outset that a strong presumption favors the constitutionality of legislative acts. Legislative bodies are generally "presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." [27] The reviewing court will uphold the statute unless it is clearly, palpably and plainly inconsistent with fundamental law.[28]

### A.

*The Subdiv. 14 Immunity From Liability To Nonresident Nongovernmental Employees Does Not Place An ⸲Undue Burden On Interstate Commerce*

Plaintiffs argue that barring nonresident nongovernmental employees from suing the State for the harm occasioned by its employees places a burden on interstate commerce by turning out-of-state business travelers present on Oklahoma streets and highways into "defenseless targets" for State employees "to injure, maim, or even

---

20. *Huff, supra* note 15 at 186 n. 12.

21. In *Huff, supra* note 15, we commented that the legislature *had considered but rejected* from a proposed Subdiv. 14 text the words "any loss to any claimant." *Id.* at 186. The word "loss" means death or bodily injury and the phrase "any claimant" would include any aggrieved person who files a claim. We concluded that the Legislature's excision from the proposed act of the words "any loss" and "any claimant" evinced an intent to keep the reach of immunized liability confined to claims made by the State's and political subdivisions' own employees.

22. 51 O.S.Supp.1988 § 155(14) (emphasis added), *supra* note 1.

23. Art. I, § 8, cl. 3, U.S. Const.

24. 14th Amend., § 1, U.S. Const.

25. 14th Amend., § 1, U.S. Const.

26. Art. 4, § 1, U.S. Const.

27. *Nordlinger v. Hahn*, 505 U.S. ——, ——, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992), quoting from *McGowan v. Maryland*, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). As a general principle of law, the legislature is presumed to have acted in a constitutional manner. Indeed, we are required to presume—until the contrary is shown—that the legislature intended to act within the limitations of the constitution. *Oklahoma City News Broadcasters Ass'n v. Nigh*, Okl., 683 P.2d 72, 75 (1984); *Black v. Ball Janitorial Serv., Inc.*, Okl., 730 P.2d 510, 512 (1986); *T.I.M. Co. v. Oklahoma Land Title Ass'n*, Okl., 698 P.2d 915, 920 (1985); *Kimery v. Pub. Serv. Co.*, Okl., 622 P.2d 1066, 1069 (1981); *City of Duncan v. Bingham*, Okl., 394 P.2d 456, 462 (1964); *Application of Oklahoma Turnpike Authority*, Okl., 365 P.2d 345, 355 (1961); *Jack v. State*, 183 Okl. 375, 82 P.2d 1033, 1036 (1938).

28. *Black v. Ball Janitorial Service, Inc., supra* note 27 at 512.

kill ... without recourse." This, the plaintiffs urge, would produce a chilling effect on interstate commerce.

■ Generally, when state law is challenged under a Commerce Clause we must inquire (1) whether the challenged statute regulates evenhandedly with only "incidental" effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect; (2) whether the statute serves a legitimate local purpose; and, if so, (3) whether alternative means could equally well promote this local purpose without discriminating against interstate commerce.[29]

■ It is apparent that Subdiv. 14 regulates *evenhandedly* and does not discriminate against those in interstate commerce. The 1988 text of Subdiv. 14 immunity *applies equally* to governmental and nongovernmental employees who are covered either by the workers' compensation law of Oklahoma or by that of a sister state. Subdivision 14 prevents *all* such employees from pressing a claim against the state.[30] It makes no distinction between resident and nonresident claimants. Further, the Governmental Tort Claims Act does not preclude an injured nonresident from seeking redress from his or her state of residence.[31]

Another critical inquiry under the Commerce Clause is whether the practical effect of the state law is to control conduct beyond the boundaries of Oklahoma.[32] There is nothing in the Tort Claims Act that interposes the State's sovereign immunity on acts or omissions which occur outside of Oklahoma. While Subdiv. 14 may have some incidental effect on interstate commerce, it does not, on its face or in its practical effect, discriminate against persons engaged in that enterprise.

Because the Tort Claims Act places no undue burden on interstate commerce, the State is not required to justify the Subdiv. 14 shield from liability either on a legitimate local purpose or on some less discriminatory alternative.

## B.

*Subdiv. 14 Violates Neither The Due Process Nor The Equal Protection Clause Of The Fourteenth Amendment*

■ Plaintiffs assert that the Subdiv. 14 immunity would violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment if it were expanded to include all persons covered under *any state's* compensation law.

■ This court held that sovereign immunity from liability violates neither the Due Process nor the Equal Process Clause of the state or federal constitutions.[33] The State is not mandated by the U.S. Constitution to have a governmental tort liability act that creates delictual responsibility coextensive with that of private tortfeasors. The latter tortfeasors represent an entirely different class.[34] The Equal Protection Clause, while not an absolute guarantee of equality of operation or application of state legislation, is intended to safeguard the quality of governmental treatment against arbitrary discrimination.[35] Because the 1988 Subdiv. 14 amendment makes *no* distinction between resident and nonresident victims of governmental or sovereign negligence nor provides for nonresidents a regime that is different from that available

---

**29.** *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979).

**30.** *See* Part II *supra.*

**31.** In *Huff, supra* note 15 at 186–187, the Subdiv. 14 immunity was held to include claims by governmental employees which could be pressed under the compensation laws of any state. There is no indication in *Huff,* or in any other decision of this court, which operates to bar injured persons from seeking relief under other states' compensation laws. *Id.*

**32.** *Healy v. Beer Institute, Inc.,* 491 U.S. 324, 336–337, 109 S.Ct. 2491, 2499, 105 L.Ed.2d 275 (1989).

**33.** *Neal v. Donahue,* Okl., 611 P.2d 1125, 1129 (1980); *Griggs v. State, ex rel. Okl. Dept. of Transp.,* Okl., 702 P.2d 1017, 1019 (1985).

**34.** *Black v. Ball Janitorial Service, Inc., supra* note 27 at 513.

**35.** *Nordlinger, supra* note 27, 505 U.S. at ——, 112 S.Ct. at 2331.

**578**

to residents, it does survive a constitutional challenge on due process or equal protection grounds.

### C.

*Subdiv. 14 Does Not Violate The Full Faith And Credit Clause*

██ The purpose of the Full Faith and Credit Clause is to secure recognition for the public acts of other states.[36] Plaintiffs would have this court read the clause as a mandate to apply Texas law to the case at bar as well as that state's counterpart of our exclusivity provisions of 85 O.S.Supp. 1984 § 12.[37] A state is neither compelled to subordinate her laws to those of another state[38] nor to substitute the workers' compensation regime of another state for that of her own, even when the other state's law affords an exclusive remedy.[39]

██ The text of Subdiv. 14 under scrutiny here does not call upon us to give extraterritorial application to Oklahoma laws in violation of the Full Faith and Credit Clause. The tort claims before us *are not* governed by Texas law[40] but by Oklahoma's own legal system. Were we to adopt the plaintiffs' argument, the Texas-law version of compensation regime's exclusivity would be imposed extraterritorially upon these two claims for a tort that arose in this State. This we are neither

required nor willing to do.[41] As we noted recently, "there is nothing in the statutory language to indicate the Oklahoma Legislature's intent to apply extraterritorially the Governmental Tort Claims Act."[42]

Summary judgments affirmed.

ALL JUSTICES CONCUR.

---

**36.** Oklahoma applies certain limitations of liability imposed by sister states when the accident occurs in this state. *Beard v. Viene*, Okl., 826 P.2d 990, 998 (1992). Under the principle of comity proclaimed in *Beard*, Oklahoma "recognized" the recovery limit on the municipal tort liability of the State of Missouri, thus affording deferential respect to the applicable Missouri statutes.

**37.** For the pertinent provisions of 85 O.S.Supp. 1984 § 12, see *supra* note 18.

**38.** *Pink v. A.A.A. Highway Express*, 314 U.S. 201, 209, 62 S.Ct. 241, 246–247, 86 L.Ed. 152 (1941).

**39.** *Sade v. Northern Natural Gas Company*, 458 F.2d 210, 216 (10th Cir.1972); *Sheerin v. Steele*, 240 F.2d 797, 800–802 (6th Cir.1957), *cert. denied*, 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760 (1957).

**40.** For the provisions of Texas compensation law, see *supra* note 2.

**41.** The plaintiffs' briefs do not suggest, and we find no basis for concluding, that their claims for recovery of damages from harm occurring in Oklahoma have any *significant contacts* with Texas within the meaning of our conflict-of-laws rule announced in *Brickner v. Gooden*, Okl., 525 P.2d 632, 637 (1974), and *White v. White*, Okl., 618 P.2d 921, 924 (1980). *Brickner* and *White* teach that the parties' rights and liabilities regarding a tort are *determined by the substantive law of the state which has the most significant relationship to the occurrence and to the parties.* Oklahoma no longer follows the rigidity of *lex loci delicti*—the traditional choice-of-law principle that once called for undeviating application of the substantive law of the place where the tort occurs. For authority that explains and adheres to the now-rejected rule of yore, see *Holder v. Holder*, Okl., 384 P.2d 663, 664 (1963).

**42.** *Beard, supra* note 36 at 997.