959 P.2d 989 (1998)
1998 OK CIV APP 84
In the Matter of B.N.B., C.M.B., J.J. and R.D.J., alleged deprived children.
STATE of Oklahoma, Plaintiff/Appellee,
v.
Patricia Breeden JESTER and Justin Jester, Sr., Defendants/Appellants.
No. 90238.
Court of Civil Appeals of Oklahoma, Division No. 1.
May 22, 1998.
Todd A. Cone, Nowata, for Defendants/Appellants.
Stephen Andrew Kunzweiler, Assistant District Attorney, Bartlesville, for Plaintiff/Appellee, State of Oklahoma.
Patrick H. Roark, Bartlesville, for B.N.B., C.M.B., J.J. & R.D.J.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 1.

*990 OPINION

GARRETT, Judge:
¶ 1 B.N.B. and C.M.B., minor children of Patricia Breeden, now Jester (Patricia), were adjudicated deprived in December 1994. She stipulated to neglect of the children. A service plan was adopted for her. The natural father of B.N.B. and C.M.B. did not appear during the court proceedings. Subsequently, Patricia married Justin Jester, Sr. (Jester). J.J. was born of that marriage in September, 1995. In June, 1996, J.J. was adjudicated deprived after Patricia and Jester stipulated to domestic abuse in addition to physical neglect of J.J. The State of Oklahoma also alleged medical neglect, but Patricia and Jester did not stipulate to that allegation. Another child, R.D.J. was born of the marriage in December 1996, and was removed from the care of Patricia and Jester. R.D.J. was found to be deprived due to the parents failure to correct conditions which led to the deprived adjudication of R.D.J.'s sibling and half-siblings. Dispositional plans which adopted a treatment plan for Patricia and Jester were adopted by the court. The State of Oklahoma filed motions to terminate Patricia's parental rights as to all four children and to terminate the parental rights of Jester as to J.J. and R.D.J. The State alleged they failed to correct the conditions which led to the previous adjudications. After trial by jury, a verdict was returned for termination of parental rights. Patricia and Jester (collectively, Appellants) appeal.

ONE
¶ 2 Appellants contend their right to equal protection of law under the 14th Amendment to the United States Constitution was violated. The attorney for the children argues that this contention was not preserved for appeal because Appellants failed to address the issue at the trial court level. However, public policy requires us to consider this fundamental issue. See, Northwest Datsun v. Oklahoma Motor Vehicle Com'n, 1987 OK 31, 736 P.2d 516. Specifically, Appellants contend that a higher burden of proof is required, for termination of parental rights of an Indian family pursuant to federal law, than that which is required as to other persons. Therefore, Appellants say, they are victims of racial discrimination by virtue of the color of their skin, since they are not Indians. In particular, 25 U.S.C. § 1912(f) provides:
No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. (Emphasis added).
State law controls termination of parental rights of parents other than Indians. For them, a lower standard of proof, that of clear *991 and convincing evidence, exists.[1] Pursuant to 10 O.S. Supp.1995 § 7006.1, in order to terminate parental rights, the state must show, by clear and convincing evidence, that (a) the child is deprived; (b) such condition is caused or contributed to by acts or omissions of his parent; and, (c) termination of parental rights is in the best interests of the child. The burden of evidence or persuasion then shifts to the parent to show by clear weight of the evidence that conditions have changed and have been corrected. Matter of C.G., 1981 OK 131, 637 P.2d 66, 68.
¶ 3 Our question becomes: Is there a rational basis for the distinction between termination of Indian parental rights and the termination of parental rights of others? If there is a rational basis there is no unequal protection of the law and therefore no violation of the edicts of the 14th Amendment. We find there is a rational basis. The distinction between Indian families and non-Indian families and the reason for requiring a higher standard of proof for the termination of an Indian's parental rights is found in 25 U.S.C. § 1901. In pertinent part, § 1901 provides:
Recognizing the special relationship between the United States and the Indian tribes and their members and the Federal responsibility to Indian people, the Congress finds 
(1) that clause 3, section 8, article I of the United States Constitution provides that "The Congress shall have Power ... To regulate Commerce ... with Indian tribes" and, through this and other constitutional authority, Congress has plenary power over Indian affairs;
(2) that Congress, through statutes, treaties, and the general course of dealing with Indian tribes, has assumed the responsibility for the protection and preservation of Indian tribes and their resources;
(3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;
(4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and
(5) that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.
¶ 4 In Kirk v. Board of County Commissioners, Muskogee County, 1979 OK 80, 595 P.2d 1334, the court said:
Exact equality is not a prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment. The only forbidden classification involves invidious discrimination. Invidious discrimination is defined as a classification which is arbitrary, irrational, and not reasonably related to a legitimate purpose. A law is invidiously discriminatory when it lays an unequal hand on those in the same class and same quality and not on another. In order to establish a violation of the equal protection clause, there must be proof that a discriminatory intent or purpose was the motivating factor in the official action. De jure discrimination in which a law or official policy expressly treats a class of persons in a less favorable manner is by its very nature intentional. Discrimination, in general, is a failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored. Equal protection does not require identity of treatment. It only requires that: the classification rest on real and not feigned *992 differences; the distinction have some relevance to the purpose for which the classification is made; and the different treatments are not so disparate relative to the difference in classification as to be completely arbitrary. (Footnotes omitted).
¶ 5 The class of Indian families is set apart from the larger class of non-Indian families for the purpose of preserving a unique cultural identity. Thus the larger class of parents is not discriminated against, but the smaller class of Indian parents is treated specially. Other such specially treated classes have been found not to violate the equal protection clause of the 14th Amendment. See, Brown v. Ford, 1995 OK 101, 905 P.2d 223, (employers with less than fifteen employees in a sexual harassment lawsuit); Resolution Trust Corp. v. Grant, 1995 OK 68, 901 P.2d 807, (senior citizen taxpayers); Childs v. State ex rel. Oklahoma State University, 1993 OK 18, 848 P.2d 571, (government tortfeasors); Ross v. Peters, 1993 OK 8, 846 P.2d 1107, (shorthand reporters who employ the stonemask method of reporting); In the Matter of W.D., 1985 OK 65, 709 P.2d 1037, (statements of children age ten and under in juvenile and criminal proceedings); and, Clegg v. Oklahoma State Election Board, 1981 OK 140, 637 P.2d 103, (candidates who garner less that fifteen percent of the vote). In view of the above, we must say the special cultural distinctions of a sovereign nation provide a rational basis for the higher standard of proof required for terminating parental rights in Indian families. We see no error as alleged.

TWO
¶ 6 Next, Appellants contend it was error for the court to allow the hearsay statement of one of the children who said she was sexually abused by Jester. At the hearing, the attorney for the children questioned an expert witness as to whether the children had acquired the behavior of "acting out" sexually while in the foster home. The expert witness answered that in her opinion, the "acting out" behavior had not been acquired at the foster home because one of the children told the expert that Jester had touched the child in a sexually inappropriate manner. The child was five years old at the time the statement was made. Specifically, Appellants contend the court failed to comply with 12 O.S.1991 § 2803.1 because it did not: (a) conduct a hearing outside the presence of the jury to determine the time, content and totality of the circumstances surrounding the statement which showed the reliability of the statement; and, (b) the State failed to make known its intention to produce the statement at least ten days prior to the proceedings so that Appellants could have an opportunity to answer. Appellants contend allowing the expert witness to answer was more prejudicial than it was probative and to allow the expert witness to answer was reversible error. After objection by the Appellants, the court allowed the expert witness to answer based on 12 O.S.1991 § 2705 which provides:
The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may be required to disclose the underlying facts or data on cross-examination.
¶ 7 The testimony was elicited upon cross-examination by the attorney for the children. It was not produced by the State. A cross-examiner is allowed to inquire, and the expert witness may give an answer which includes otherwise inadmissable hearsay, if it is the factual basis for the expert witness's opinion. 12 O.S.1991 § 2704 provides:
Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
The admission of the expert witness's testimony was within the discretion of the court. Appellants have the burden of showing that the result probably would have been different if this evidence had been excluded. After a review of the record, we cannot say they have sustained their burden, or that the court abused its discretion in allowing the evidence to be presented on cross-examination.

*993 THREE

¶ 8 Appellants contend the court committed reversible error by not allowing them to examine documents used to refresh a witness's memory. During the trial, a witness said he had referred to documents in his brief case to refresh his memory prior to testifying. The witness testified: he was a court appointed investigative worker in the case; he had met B.N.B. and C.M.B. while they were in foster care; he visited with the children once or twice a month since that time; J.S.J. and R.D.J. had since been placed in foster care and he visited them on a limited basis; the children had been placed in an "excellent home"; the two older siblings had bonded and should remain together; he had observed the two older children visiting with Appellants and the children did not "personally relate" to Patricia; the children exhibited "negative behavior" after a visit; the witness was concerned that Patricia was not attempting to find employment, which was part of the service plan; he had observed reports of other witnesses in connection with the case; he had concerns about whether Patricia could obtain permanent employment and believed violence was inherent in her personality structure; it was important for children not to be in a situation of domestic violence, these children now have a safe and stable home, and, generally, children learn what they see. On cross-examination, Appellants requested an opportunity to view the documents reviewed prior to trial, but were denied by the court. The court stated, and the record reflects, the witness's testimony was substantially the same as that given by Jester, except for his opinions. The State and children objected to the inspection on the ground that no foundation had been laid, and the records were voluminous and repetitious. The inspection request was denied. Appellants cite 12 O.S.1991 § 2612 which provides:
If a witness uses a writing to refresh his memory either while testifying or before testifying, the court shall allow an adverse party to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed by an opposing party that the writing contains matters not related to the subject matter of the testimony, the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved, made part of the record, and shall be available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order, the court in a civil case shall make any order justice requires. In criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or declaring a mistrial.
¶ 9 The court should have allowed Appellants to review the document. However, they have failed to show how the outcome of the trial might have been different had they been allowed to do so. We fail to perceive a clear and prejudicial abuse of discretion. Any error was harmless.

FOUR
¶ 10 Finally, Appellants contend the court erred by allowing a lay witness to testify as if that witness were an expert, by allowing the witness to give her opinion. The record shows the Appellants requested the opinion of the witness. Therefore, error, if any, was invited by Appellants who will not be heard to complain on appeal. Middlebrook v. Imler, Tenny & Kugler M.D.'s, Inc., 1985 OK 66, 713 P.2d 572.

CONCLUSION
¶ 11 In our view of the above, we find that the judgment of the trial court should be, and it is affirmed.
¶ 12 AFFIRMED.
JOPLIN, P.J., and CARL B. JONES, V.C.J., concur.
NOTES
[1] For a discussion of the standards of proof, see Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Addington notes three standards of proof, which, in order of less stringency are: beyond a reasonable doubt; clear and convincing; and, preponderance of the evidence. Also see: In the Matter of J.M., 1993 OK CIV APP 121, 858 P.2d 118.