2003 OK 30

Elaine Desouza GLADSTONE, As Special Administratrix of the Estate of Martin John Gladstone, and As the Widow of Martin John Gladstone, Plaintiff–Appellant,

v.

BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30 (I–30), Defendant–Appellee.

No. 97,544.

Supreme Court of Oklahoma.

March 18, 2003.

Alan R. Carlson, William W. Busby, Garrison, Brown, Carlson, Buchanan & Busby, Bartlesville, OK, for Appellant.

Frederick J. Hegenbart, Rosenstein, Fist & Ringold, Tulsa, OK, for Appellee.[1]

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

OPALA, V.C.J.

¶ 1 The dispositive issue on certiorari is whether the terms of § 155(14)[2] of the Governmental Tort Claims Act [GTCA]—which *exclude* from state tort liability claims for death (or bodily injury) from an on-the-job injury covered by workers' compensation but **extend** government's tort accountability to claims by persons with access to collateral sources of indemnity other than workers' compensation (and employer's liability)—*violate* (1) the Equal Protection Clause of the U.S. Constitution and the equal treatment notions protected by the state constitution and (2) the Due Process Clauses in both the Oklahoma and the U.S. Constitutions? We answer in the negative.

I

**THE ANATOMY OF LITIGATION**

¶ 2 Martin John Gladstone [decedent] was killed when struck by a school bus driven by an employee of the Bartlesville Independent School District No. 30 [District]. Decedent's widow, Elaine Desousa Gladstone [Gladstone or widow], received the statutory workers' compensation death benefits[3] from the dece-

dent's employer, Phillips Petroleum Company. Gladstone then brought a wrongful death action against District. The trial court gave summary judgment to District. The latter's quest for summary relief stood rested on § 155(14) of the GTCA [subdiv. 14],[4] whose terms shield the state or political subdivision from liability for "any loss to any person covered by any workers' compensation act."[5] Finding the facts to be undisputed (and inferentially not supportive of opposite inferences), the trial court concluded (a) the case is governed by *Childs v. State of Oklahoma*[6] and *Smith v. State Dept. of Transportation*[7] as well as by Art. 23 § 7, Okl. Const.,[8] (b) there is a rational basis for the governing legislation, (c) no fundamental right of the plaintiff is violated and (d) the GTCA immunizes District from liability because the plaintiff's loss is protected by workers' compensation coverage.

¶ 3 The Court of Civil Appeals [COCA] affirmed, noting that Gladstone's equal protection challenge stands rejected by extant jurisprudence.[9] While it viewed Gladstone's arguments as both rational and persuasive, the appellate court declined her invitation to

2. The pertinent terms of 51 O.S.2001 § 155(14) are:

> "The state or a political subdivision shall not be liable if a loss or claim results from:
> . . .
> (14) Any loss to any person covered by any workers' compensation act or any employer's liability act: . . ."

3. 85 O.S.2001 § 22(8).

4. 51 O.S.2001 § 151 *et seq*.

5. *Supra* note 2.

6. 1993 OK 18, 848 P.2d 571. In *Childs* the court held the subdiv. 14 immunity embraced claims *by all nongovernmental employees* covered for the injurious event by the *workers' compensation regime of any state.* The exemption survived a due process and equal protection challenge in *Childs* because it neither made a distinction between resident and nonresident victims nor provided for nonresidents a regime that is different from that available to residents.

7. 1994 OK 61, 875 P.2d 1147. The court held in *Smith* that *Childs, supra* note 6, was dispositive

of a truck driver's wrongful death claim against the state.

8. The terms of Art. 23 § 7, Okl. Const., are:

> The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation, *provided however, that the Legislature may provide an amount of compensation under the Workers' Compensation Law for death* resulting from injuries suffered in employment covered by such law, in which case the compensation so provided shall be exclusive, and the *Legislature may enact statutory limits on the amount recoverable in civil actions or claims against the state or any of its political subdivisions.*
> (emphasis added).

9. For this view, COCA cites *Childs, supra* note 6, *Smith, supra* 7, and *Maltsberger v. Board of County Comm'rs,* 1999 OK CIV APP 79, 987 P.2d 437. In *Maltsberger affirmance* of summary judgment for the county in an injured postal employee's claim for damages was **rested** on subdiv. 14 immunity, even though the compensation claim of the employee had been denied for insufficiency of the medical evidence.

follow Minnesota [10] authority and to strike down subdiv. 14 as constitutionally infirm.

¶ 4 Although we reach today the same conclusion as COCA, we vacate that court's opinion to settle the point of law by a precedential pronouncement.

## II

## STANDARD OF REVIEW

¶ 5 The material facts in this cause are undisputed and support but a single inference in favor of the movant.[11] The issues tendered on certiorari call solely for this court's resolution of legal questions. Review of contested issues of law is governed by a *de novo* standard.[12] In its re-examination of a trial court's legal rulings an appellate court exercises plenary, independent and nondeferential authority.[13]

## III

## CONSTITUTIONALITY OF THE SUBDIV. 14 EXEMPTION

¶ 6 Gladstone asserts that the subdiv. 14 contravenes the (a) Equal Protection Clause of the 14th Amend., U.S. Const.,[14] as well as the equal treatment notions protected

by the state constitution [15] and (b) the Due Process Clauses of both the Oklahoma and the U.S. Constitutions.[16]

## A.

### *Equal Protection Challenge*

¶ 7 Gladstone argues that subdiv. 14 violates the equal protection guarantee because there is no rational basis for a classification that impermissibly excludes from state tort liability all claims for on-the-job bodily injuries (or death) which are covered by compensation but not the claims in which the plaintiff may have access to a collateral indemnity source much more generous than that afforded by the workers' compensation regime. She urges that subdiv. 14 has not been tested by extant jurisprudence for constitutional conformity on the ground she presses. According to Gladstone, *Childs*[17] is factually distinguishable. There subdiv. 14 was attacked as offensive to equal treatment either for (a) Texas and Oklahoma citizens or for (c) governmental and nongovernmental employees. She claims *Smith*[18] provides no support for District's position because there the court relied solely on *Childs* without providing an independent equal protection analysis. She

10. *Gladstone relies on Bernthal v. City of St. Paul,* 376 N.W.2d 422 (Minn.1985).

11. *Shamblin v. Beasley,* 1998 OK 88, ¶ 9, 967 P.2d 1200, 1207.

12. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is hence reviewable by a *de novo* standard. *Brown v. Nicholson,* 1997 OK 32, ¶ 5, 935 P.2d 319, 321.

13. *Mahan v. NTC of America,* 1992 OK 8, ¶ 2, 832 P.2d 805, 808 (Opala, C.J., concurring) (*"[t]he de novo standard of review is utterly nonde-ferential because it ascribes absolutely no weight to a lower tribunal's findings"*); *Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084; *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

14. The Equal Protection Clause of the 14th Amend., § 1, U.S. Const., commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992).

15. Although the Oklahoma Constitution does not contain an equal protection provision like or

similar to that found in its federal counterpart, this court has identified a functional equivalent of that clause in the anti-discrimination component of our state constitution's due process section, Art. 2, § 7, Okl. Const.; *Fair School Finance Council v. State,* 1987 OK 114, ¶ 54, 746 P.2d 1135, 1148 n. 48; *McKeever Drilling Co. v. Egbert,* 1934 OK 763, ¶ 15, 40 P.2d 32, 35, 170 Okla. 259. The terms of § 7 are:

No person shall be deprived of life, liberty, or property, without due process of law.

16. Art. 2 § 7, Okl. Const., *supra* note 15; Art. 14 § 1, U.S. Const., *supra* note 14. Our due process clause "has a definitional sweep that is coextensive with its federal counterpart." *Fair School Finance Council, supra* note 15 at 1148; *McKeever Drilling Co., supra* note 15 at 35. *See Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (citing *Baldwin v. Hale,* 68 U.S. (1 Wall.) 223, 17 L.Ed. 531 (1863) and *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

17. *Supra* note 6.

18. *Supra* note 7.

directs us to *Bernthal v. City of St. Paul*[19] where a similar exemption was condemned as constitutionally infirm. Gladstone urges the court to adopt the Minnesota solution.

¶ 8 District asserts that Gladstone has identified no reason for this court to depart from precedent established in *Childs* and *Smith*.[20] According to District, West Virginia jurisprudence upheld an exemption similar to subdiv. 14[21] and expressly rejected the argument Gladstone presses here. We are urged to adopt the rationale of West Virginia and uphold the validity of the legislation in contest.

¶ 9 The Equal Protection Clause of the Fourteenth Amendment mandates that no state "deny to any person within its jurisdiction the equal protection of the laws."[22] An "equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right [such as the right to vote, the right of interstate travel, rights guaranteed by the First Amendment, or the right to procreate] or operates to the peculiar disadvantage of a suspect class [such as a class based on race, alienage or ancestry]."[23] Although not an absolute guarantee of equality of operation or application of state legislation, the Equal Protection Clause is intended to safeguard the quality of governmental treatment against arbitrary discrimination. Economic legislation—like that tendered for testing here—which is not *drawn upon inherently suspect classifications* or *impinges upon anyone's fundamental rights* must generally be upheld against an equal protection attack[24] when the legislative means are *rationally related to a legitimate governmental purpose*.[25]

¶ 10 It is not urged here that the challenged scheme is drawn upon some inherently suspect classification. Nor does our research find that governmental tort claimants have ever been held to form a protected class entitled to a heightened standard of review. Gladstone claims that subdiv. 14 arbitrarily and unfairly *burdens* a fundamental right—*the right to life*[26] as well as *stifles* the exercise of a fundamental personal liberty—*that of obtaining redress from a governmental tortfeasor*.

**19.** *Bernthal, supra* note 10 at 425–26. There the court struck down as violative of equal protection an exemption in its governmental tort claim statute which excluded from suits against a municipality those where the plaintiff is eligible to receive workers' compensation.

**20.** District relies on *Childs, supra* note 6, *Smith, supra* note 7 and *Maltsberger, supra* note 9.

**21.** *O'Dell v. Town of Gauley Bridge*, 188 W.Va. 596, 425 S.E.2d 551 (1992).

**22.** Art. 14 § 1, U.S. Const. When called upon to analyze a case on equal protection grounds, a court will apply one of three standards of review; (a) rational basis, (b) heightened scrutiny, or (c) strict scrutiny. If the classification does not implicate a suspect class or abridge a fundamental right, the rational-basis test is used. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440–42, 105 S.Ct. 3249, 3254–255, 87 L.Ed.2d 313 (1985).

**23.** *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976), citing *San Antonio School District v. Rodriguez*, 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973). The Court defined a suspect class as one that is "saddled with such disabilities, or subjected to such history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to

command extraordinary protection from the majoritarian political process." *Murgia, supra*, 427 U.S. at 313, 96 S.Ct. at 2567.

**24.** When social or economic legislation is at issue, the Equal Protection Clause allows the states wide latitude. *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 174–75, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980); *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *Ross v. Peters*, 1993 OK 8, ¶ 23, 846 P.2d 1107, 1117–18.

**25.** Unless a classification warrants some form of heightened review because it jeopardizes the exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest. *Cleburne, supra* note 22, 473 U.S. at 440–41, 105 S.Ct. at 3254–55; *Hodel v. Indiana*, 452 U.S. 314, 331, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981); *Dandridge v. Williams*, 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970).

**26.** Gladstone cites to Art. 2 § 2, Okl. Const. Its terms are:

All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry

¶ 11 While the U.S. Supreme Court has examined "right-to-life" issues in other contexts,[27] Gladstone has presented nothing to show that *bringing a wrongful death action* against a governmental tortfeasor is a fundamental right for federal equal protection purposes. Because there is no federal supreme court jurisprudence which imposes upon the states some canonical regime of constitutionally acceptable public tort liability,[28] we must *decline* today either (a) *to craft* a mandate in advance of the highest court's authoritative pronouncement or (b) *to hold* that the legislature's exclusion from state tort liability of persons similarly situated to the decedent arbitrarily impinges upon a fundamental value.

### Rational–Basis Review

¶ 12 Because we are dealing here neither with a suspect classification nor with an infringement upon a fundamental right,

the rational-basis standard of review governs this dispute.[29] Rational-basis scrutiny is a highly deferential standard that proscribes only that which clearly lies beyond the outer limit of a legislature's power.[30] A statutory classification is constitutional under rational-basis scrutiny so long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." [31] The rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." [32] For these reasons, legislative bodies are generally "presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." [33]

### The Legislative Objective Of § 155(14) Immunity

¶ 13 The common-law doctrine of governmental tort immunity *protects public*

27. *See, e.g., Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (capital punishment); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (abortion); *Cruzan by Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990)(mercy killing).

28. *Childs, supra* note 6 at ¶ 20, at 577; *Black v. Ball Janitorial Serv., Inc.*, 1986 OK 75, ¶ 7, 730 P.2d 510, 513.

29. "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger, supra* note 14, 505 U.S. at 10, 112 S.Ct. at 2331; *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981); *United States Railroad Retirement Board, supra* note 24, 449 U.S. at 174–175, 101 S.Ct. at 459–460; *Vance v. Bradley*, 440 U.S. 93, 96–97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979); *New Orleans, supra* note 24, 427 U.S. at 303, 96 S.Ct. at 2516–17.

30. In the area of equal protection challenges to economic legislation, the judiciary extends great deference to the legislature's judgment. Deferential review is grounded in part on the view that line-drawing is an inevitable aspect of the legislative function and that "even improvident decisions will eventually be rectified by the democratic processes." *City of Cleburne, supra* note 22, 473 U.S. at 440, 105 S.Ct. at 3254; *New*

*Orleans, supra* note 24, 427 U.S. at 303, 96 S.Ct. at 2516, citing *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973) (when local economic regulation is challenged solely for violating the Equal Protection Clause, the U.S. Supreme Court defers to legislative determinations as to the desirability of particular statutory discriminations).

31. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). The U.S. Supreme Court has explained that: "Where there are' plausible reasons' for Congress' action, 'our inquiry is at an end.' *United States R.R. Retirement Bd., supra* [note 24], 449 U.S. at 179, 101 S.Ct. at 461. This standard of review is a paradigm of judicial restraint." *F.C.C. supra*, 508 U.S. at 313–14, 113 S.Ct. at 2101.

32. *F.C.C., supra* note 31, 508 U.S. at 313, 113 S.Ct. at 2101; *Dandridge, supra* note 25, 397 U.S. at 486, 90 S.Ct. at 1162.

33. *Nordlinger, supra* note 14, 505 U.S. at 10, 112 S.Ct. at 2331, quoting *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge, supra* note 25, 397 U.S. at 485, 90 S.Ct. at 1161 (quoting *Lindsley v.*

*funds from claims by private persons.* *Vanderpool v. State*[34] abrogated Oklahoma's judge-made source of that doctrine and left unaffected the legislature's power to regulate the entire field of governmental tort liability. The legislature then enacted a modified form of sovereign immunity into the body of statutory law and waived its shield against liability (of the state and its political subdivisions) "only to the extent and in the manner provided in" the Act. Subject only to the *Act's specific limitations and exceptions,* the GTCA extends governmental accountability to all torts for which a private person or entity would be liable. The legislature kept in force certain forms of immunity from liability by providing in § 155 thirty-two [35] carefully circumscribed exemptions. Section 155(14) of the GTCA affords immunity to a governmental subdivision for claims of bodily injury or death from an on-the-job injury which are "covered by any workers' compensation act or any employer's liability act." In short, while the state and political subdivisions *are not liable* for injuries to tort claimants who stand covered by the workers' compensation regime, they *are legally accountable* for the injuries to tort claimants not otherwise protected.[36]

¶ 14 The hardship Gladstone complains of is the arguable unfairness in treating governmental tort claimants who are covered by workers' compensation differently from persons without that coverage. The latter class not only may sue in tort to recover damages for the negligent acts of governmental tort-feasors but is also accorded access to collateral indemnity sources without losing the right to press a public tort claim. The critical question here is whether the classification in question rests upon a difference which bears a reasonable relationship to the goals of the GTCA.

¶ 15 The Equal Protection Clause does not, for purposes of rational-basis review, demand that a legislature actually articulate the purpose or rationale that supports its classification.[37] A court will hypothesize reasons for the law's enactment if the legislature fails to do so.[38] While there is nothing in the statutory language to indicate the Legislature's purpose in excluding from government tort liability all claims covered by workers' compensation liability, *the obvious objective* is to protect the public fisc by limiting recoverability for public wrongs. We must next consider whether the subdiv. 14 exemption is *rationally related* to this legitimate state objective.

¶ 16 Gladstone argues that the existence of a collateral source of benefits—workers' compensation—is not a reasonable basis for the classification. She claims subdiv. 14 cannot withstand a rationality test because it creates an impermissible classification based upon *criteria—source of collateral benefits*—wholly unrelated to the legislative objective. She urges there is an absence of reason for this

---

*Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)).

**34.** 1983 OK 82, 672 P.2d 1153, 1156–57. *Vanderpool* teaches that in the absence of a statute conferring partial or total immunity, the state, its political subdivisions and their employees acting within the scope of their employment would stand liable in tort in the same manner as a private individual or corporation.

**35.** The exemptions set forth in 51 O.S.2001 § 155 address themselves to claims over which the state expressly retains its sovereign immunity. The § 155 terms provide that the state or a political subdivision shall not be liable if a loss or claim results from any one of thirty-two specified activities of the state or its agents.

**36.** This exception (§ 155(14)) will not avail if the workers' compensation protection proves un-

available either because the deceased was not within the scope of employment or any other employment-related risk. The record in this case does not reflect that the workers' compensation liability's protection failed for any reason. *See in this connection Maltsberger, supra* note 9.

**37.** *Nordlinger, supra* note 14, 505 U.S. at 15, 112 S.Ct. at 2334; *United States Railroad Retirement Bd., supra* note 24, 449 U.S. at 179, 101 S.Ct. at 461 (the U.S. Supreme "Court has never insisted that a legislative body articulate its reasons for enacting a statute"); *McDonald v. Board of Election Comm'rs of Chicago,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969) (a legitimate state purpose may be ascertained even when the legislative or administrative history is silent).

**38.** *T.I.M. Co., Inc. v. Oklahoma Land Title Ass'n,* 1984 OK 66, 698 P.2d 915, 920; *Williamson v.*

arbitrary distinction.[39]

¶ 17 The parties inform us that a similar exclusion from governmental tort liability has withstood an equal protection challenge in **West Virginia** (*O'Dell v. Town of Gauley Bridge*),[40] but was struck down in **Minnesota** (*Bernthal v. City of St. Paul*).[41] The West Virginia court observed that in **Oregon** (*Edwards v. State Military Dept.*)[42] a like exemption had passed constitutional muster. In *Edwards*, the court reasoned that the legislature need not include all persons who were otherwise covered by insurance within the excepted class because that body *is not required to enact laws which operate to solve every aspect of the problem in a perfect manner.*[43] The Oregon court also opined that the legislature may have concluded it was best to confine the exception to a compensation system with which it was familiar (*i.e.*, one that it had created).[44] Citing *Edwards* with approval, the West Virginia court reached a similar result in *O'Dell*. There the line drawn between the two classes of tort claimants was declared not to be without logic. This is so because persons covered by workers' compensation must also forego their common-law tort remedies against the employers, while those who have no access to compensation benefits retain the right to sue their employers for a full range of damages.[45] The court explicitly rejected the Minnesota solution in *Bernthal*.[46] *Bernthal*, on the other hand, focused on the *lack of any legislative history* shedding light on the purpose of the statute.[47] It perceived the want of legislative facts to be critical to its constitutional analysis, holding that even if the statute furthered the legislative purpose of protecting the political subdivision's financial integrity, the classification was nonetheless based upon impermissible criteria wholly unrelated to that objective—the source of indemnity benefits.[48]

¶ 18 Although Oklahoma, like Minnesota, lacks legislative history materials that identify the basis for the exception in contest, that

---

Lee Optical Co., 348 U.S. 483, 490, 75 S.Ct. 461, 465–66, 99 L.Ed. 563 (1955).

**39.** Gladstone asserts that the distinction is particularly arbitrary where, as here, the governmental tortfeasor would not be exposed to "double dipping" because a third party, the private employer, would be responsible for statutory death benefits.

**40.** *O'Dell, supra* note 21.

**41.** *Bernthal, supra* note 10.

**42.** 8 Or.App. 620, 494 P.2d 891 (1972). *Edwards* was followed in *Ward v. Romig*, 101 Or.App. 235, 790 P.2d 44 (1990); *Jungen v. State*, 94 Or.App. 101, 764 P.2d 938, 941 (1988), *review denied*, 307 Or. 658, 772 P.2d 1341 (1989), *cert. denied*, 493 U.S. 933, 110 S.Ct. 322, 107 L.Ed.2d 313 (1989).

**43.** According to *Edwards*, the fact that a tort claimant could recover more against the state than under the compensation act did not detract from the overall reasonableness of the classification. *Edwards, supra* note 42 at 894.

**44.** The Oregon court also noted that the statute affected a small class of plaintiffs. Persons in the excepted class must satisfy four requirements before their claims are barred by the immunity provisions: (*l*) the plaintiff must have been injured by the negligence of a political subdivision's employee; (2) the plaintiff must have been injured in the course of his employment; (3) the plaintiff's employer must have workers' compensation coverage and (4) the plaintiff must be eligible for such benefits. *Edwards, supra* note 42 at 894.

**45.** The West Virginia court held that the statute did not offend the Equal Protection Clause when considered (a) in light of its legislative purpose of protecting the governmental entity by making insurance affordable (by reducing the number of cases filed against them) and (b) from the perspective of the other class of tort claimants who are barred from suing the governmental entity (its own employees).

**46.** In *O'Dell*, the court disagreed with the *Bernthal* (*supra* note 10) *rationale* that while a classification based on the tort claimant's *source of insurance benefits* may reduce the number of suits possible against a municipality, it is nonetheless "completely unrelated to the purposes of the statute." *O'Dell, supra* note 21 at 603. The court noted that unlike in *Bernthal*, the legitimate state purpose underlying West Virginia statute was clear—to enable political subdivisions of the state to obtain affordable liability insurance. The court concluded that the legislature's exclusion from state tort liability of certain claimants, but not others, is not, of itself, evidence that the distinction bears no rational relationship to the state interest. *Id.*

**47.** *Bernthal, supra* note 10.

**48.** The Minnesota court reasoned that excluding persons covered by workers' compensation was no more rational than basing the exception on gender. *Id.*

fact alone affords no basis for judging the legislative wisdom in excluding the disputed category of claims from public tort liability. Making classifications is at the heart of the legislative function. In the economic sphere, *it is only the invidious discrimination*—the purely arbitrary act that cannot stand in harmony with the federal and state equal rights guarantee—which will doom legislation.[49] Because the legislature could have eliminated from the benefit of public tort liability *all classes of persons* who have access to collateral sources of indemnity, it is not constitutionally impermissible for the legislature to have drawn lines between groups of insured persons for the *purpose* of protecting the public fisc by reducing the number of potential tort claimants or of phasing out those benefits.[50] Legislative reform may take "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind."[51] The task of classifying persons for exclusion from public tort liability inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact that the line might have been drawn differently at some points is a matter for legislative, rather than judicial, judgment.[52] We cannot say that the challenged classification so lacks rationality as to amount to a denial of equal protection.

49. *City of New Orleans, supra* note 24, 427 U.S. at 303–04, 96 S.Ct. at 2517.

50. *Id.*

51. *Williamson, supra* note 38, 348 U.S. at 489, 75 S.Ct. at 465; *F.C.C., supra* note 31, 508 U.S. at 316, 113 S.Ct. at 2102.

52. *F.C.C., supra* note 31, 508 U.S. at 315–16, 113 S.Ct. at 2102; *United States R.R. Retirement Bd., supra* note 24, 449 U.S. at 179, 101 S.Ct. at 461.

53. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91 (1978)(quoting *Ferguson v. Skrupa,* 372 U.S. 726, 731, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93 (1963)); *New Orleans, supra* note 24, 427 U.S. at 303, 96 S.Ct. at 2515–2517. The principle of judicial restraint includes recognition of the inability and undesirability of the judiciary substituting its notions of correct policy for that of a popularly elected legislature. *Ferguson, supra,* 372 U.S. at 731–32, 83 S.Ct. at 1032.

## B.

### *Due Process Challenge*

¶ 19 Gladstone argues that subdiv. 14 is an arbitrary act because it requires that an Oklahoma citizen be restricted to workers' compensation benefits as her sole redress for the deprivation of her husband's life (or health) while the real wrongdoer (the public entity) escapes without any accountability to the tort victim. She asserts that state and federal fundamental law requires that government action affecting "life, liberty or property" must conform to that measure of fairness which accords with the minimum standards of due process.

¶ 20 Gladstone's due process challenge requires little discussion. Like the Equal Protection Clause, "the Due Process Clause does not empower the judiciary to sit as a superlegislature to weigh the wisdom of legislation."[53] In the area of economic legislation, due process challenges on substantive-law grounds, similar to equal protection contests, are also assessed against a rational-basis standard of review.[54] Given our rational-basis analysis in Part III(A), *supra,* we have no difficulty in concluding that subdiv. 14 does not contravene the mandate for testing due process application on substantive-law grounds.[55]

54. *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 82–84, 98 S.Ct. 2620, 2635–2636, 57 L.Ed.2d 595 (1978), notes that economic legislation also comes to the Court with a presumption of constitutionality and that to demonstrate a due process violation, the complaining party must " 'establish that the legislature has acted in an arbitrary and irrational way.' " (citations omitted) There, the Court concludes the Price–Anderson Act, which imposed limitations on liability for nuclear accidents, passes constitutional muster under a rational-basis analysis. *See T.I.M., supra* note 38 at 920.

55. "Substantive due process" review is "the judicial determination of the compatibility of the substance of a law or governmental action with the Constitution. The Court is concerned with the constitutionality of the underlying rule rather than with the fairness of the process [procedural due process] by which the government applies the rule to an Individual." 2 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW § 14.6 at 356 (2nd Ed.1992).

¶ 21 In sum, while the legislatively crafted incidence of public tort liability (insofar as it excludes only those protected by workers' compensation) does at first blush appear unfair and inequitable, we cannot find it constitutionally infirm.

## IV

## NONCONSTITUTIONAL CHALLENGES

▪ ¶ 22 Gladstone argues that subdiv. 14 violates the "rule of reason" and "public policy of fairness" because it places the burden of indemnity on the wrong person—the employer's compensation carrier rather than on the negligent party, the public tortfeasor. According to Gladstone, subdiv. 14 is contrary to the collateral source rule [56] in that it immunizes the public tortfeasor simply because the injured party has a collateral source of indemnity, namely workers' compensation. She claims that subdiv. 14 would encourage reckless disregard for public safety because the governmental entity would suffer no consequences for its wrongdoing whenever the injured party is covered by workers' compensation. Lastly, she urges that the exemption radically departs from the principles announced in *Vanderpool* and creates disharmony with existing Oklahoma law.[57]

▪ ¶ 23 Gladstone's arguments target the fairness and wisdom of the challenged legislative enactment. When called upon to examine a statute, this court is *confined* to entertaining attacks on its *construction* or on its *constitutional validity*. A legislative act is presumed to be constitutional and will be upheld until the contrary is shown.[58] We cannot be concerned with arguments addressing themselves to desirability, wisdom or logic of legislation unless it offends the constitution.[59] By placing responsibility on a workers' compensation carrier

for the tort of a governmental employee, the legislature has violated no constitutional norm. We are hence powerless to invalidate its act. This court is not a roving commission to scrutinize legislative fairness or to invalidate enactments that, though unfair or inequitable, are nonetheless free from constitutional warp. If we were to strike down all statutes that appear unwise or unsound, our course of conduct would severely undermine the tripartite division of powers among the three branches of state government.

## V

## SUMMARY

¶ 24 Because the *subdiv 14 exclusion of claims* from state tort liability is neither drawn upon inherently suspect classifications nor impinges upon fundamental rights, the rational-basis standard of review governs the equal protection challenge mounted in this cause. A legislative classification must be upheld against an equal protection attack if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. In the area of economic legislation the judiciary extends great deference to the lawmakers' judgment. Deferential review is grounded in part on the philosophy that line-drawing is an inevitable aspect of the legislative function. Acknowledging, as we must, the presumptive validity of legislative enactments, coupled with the well-settled rule that courts do not sit as superlegislatures, we cannot say that the disputed classification scheme is so irrational as to fail constitutional scrutiny.

¶ 25 Although we are not unmindful that the exclusion of only those persons who are protected by workers' compensation might appear unfair and inequitable, we find absolutely no basis in the equal protection or due

---

**56.** Under the collateral source rule, benefits received by the plaintiff from any source other than the tortfeasor will not reduce the quantum of recoverable damages. *Porter v. Manes,* 1959 OK 239, 347 P.2d 210, 212; *Huey v. Stephens,* 1954 OK 222, 275 P.2d 254, 257.

**57.** Gladstone claims that subdiv. 14 is disharmonious with the following provisions of state constitutional and statutory law—15 O.S.2001

§ 212, 23 O.S.2001 § 3 and Art. 2 §§ 2, 6, 7, Okl. Const.

**58.** *Nordlinger, supra* note 14, 505 U.S. at 10, 112 S.Ct. at 2331.

**59.** *F.C.C., supra* note 31, 508 U.S. at 313, 113 S.Ct. at 2101; *Dandridge, supra* note 25, 397 U.S. at 487, 90 S.Ct. at 1162.

process analyses for its condemnation as invidious discrimination or as otherwise offensive to some principle of fundamental federal or state law.

¶ 26 On certiorari granted upon the widow's petition, the Court of Civil Appeals' opinion is vacated and the trial court's summary judgment is affirmed.

¶ 27 ALL JUSTICES CONCUR.