2004 OK CIV APP 14

NORMAN HOMEOWNERS ASSOCIATION, INC., an Oklahoma not-for-profit corporation, and all others Similarly Situated, Plaintiff/Appellant,

v.

The CITY OF NORMAN, Oklahoma, an Oklahoma municipal corporation, Defendant/Appellee.

No. 98,672.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 24, 2003.

Certiorari Denied Jan. 20, 2004.

Philip W. Redwine, James L. Bintz, Law Offices of Redwine and Cubberly, Norman, OK, For Plaintiff/Appellant.

Jeff H. Bryant, Rickey J. Knighton, II, The City of Norman, Oklahoma, Norman, OK, For Defendant/Appellee.

Opinion by BAY MITCHELL, Presiding Judge.

¶ 1 Plaintiff/Appellant Norman Homeowners Association sought declaratory judgment from the trial court barring Defendant/Appellee City of Norman from enforcing against construction of new residences a tax designed to finance improvements to, and expansion of, City's wastewater system. Association also sought injunctive relief against City's collection of the tax. After the parties filed cross motions for summary judgment, the trial court granted City's motion for summary judgment on September 27, 2002, issued its findings of fact and conclusions of law on November 15, 2002, and entered judgment for City on November 25, 2002.[1]

¶ 2 City is a municipal corporation located within Cleveland County, Oklahoma. Having determined its sewer system was at 95% capacity, City hired an engineering consulting firm to devise a wastewater master plan. City also created a "Citizens Coalition on the Future of Wastewater" to formulate nonbinding recommendations for addressing current capacity problems, future system expansion, and funding. On August 14, 2001, City's voters approved three ordinances that distributed among current and future users financial responsibility for modernizing, maintaining, and expanding City's deteriorating wastewater system. Ordinance No. 0–0001–56, imposes a five dollar ($5.00) per month sewer service maintenance rate on each Norman residence, apartment, business, or mobile home receiving sewer service. Ordinance No. 0–0001–57 imposes a five-year, half-cent sales tax. Ordinance No. 0–0001–58 (the "Excise Tax Ordinance"), the subject of the present action, levies a tax against construction of new homes and commercial structures that will be connected to City's wastewater system. Eighty percent of participating City voters supported the Excise Tax Ordinance.

¶ 3 Pursuant to the Excise Tax Ordinance, City will not issue a building permit unless and until the tax is paid. It states, in pertinent part:

WHEREAS, the City Council of the City of Norman and its Citizens Coalition on the Future of Wastewater find and recommend that the costs of future improvements and expansion to the City should be borne by the users whose demand has created the need for future expansion and improvements; and

WHEREAS, the City Council desires to establish a mechanism through which to finance the future growth and expansion of the City's wastewater system from new development; and

WHEREAS, upon recommendation of its professional staff and consultants, based further on recommendation of the City's Citizens Coalition on the Future of Wastewater, the Council has and does hereby determine that such costs should be, in the future, imposed upon the development of land with the collection of the excise tax herein to be collected at the date of issu-

---

1. This appeal from the trial court's decision sustaining Appellee's motion for summary judgment is submitted without appellate briefs in conform- ance with the procedures for the appellate accelerated docket, Okla. Sup.Ct. R. 1.36, 12 O.S. 2001, Ch 15, App.

ance of the building permit on each lot; and

WHEREAS, the City Council finds that there are a number of vacant lots in approved subdivisions and further subdivisions, either platted or soon to be platted, the development of which will impose an increased demand on the City's wastewater system, and the City Council therefore finds that it is necessary to adopt the provisions of this excise tax for the imposition of appropriate costs on such lots and future development;

\* \* \* \* \*

Sec. 8–617. Wastewater System New Development Excise Tax. There is hereby established and imposed a wastewater system new development excise tax to be levied, and collected on new development to be served by the City's wastewater system, and used as set forth herein;

(a) For new residential construction the sum of eight hundred fifty dollars ($850.00) for homes up to twelve hundred (1,200) square feet and two dollars ($2.00) per square foot for each square foot in excess of twelve hundred (1,200) square feet.

(b) For non-residential construction one hundred fifteen dollars ($115.00) per employee plus four dollars ($4.00) per gallon per day of additional flow if the estimated wastewater flow is greater than thirty (30) gallons per day per employee. Water records for existing facilities will continue to be used to estimate future wastewater flow.

(c) The tax imposed herein shall be collected at the time a building permit is issued for all construction and based upon the square footage as set forth in said building permit. For residential expansions which includes [sic] the installation of plumbing fixtures, one dollar ($1.00) per square foot for each additional square foot added to the current structure.

(d) The funds collected from the imposition of this wastewater system new development excise tax shall be used for the future expansion and improvement of the City's wastewater system. Funds collected shall be paid into the Wastewater Capital Account and accounted separately therein; such funds and the interest accruing thereon shall be used exclusively for wastewater expansion, improvements, and to pay debt service obligations issued to finance said future improvements and expansion of said wastewater system.

City contends the Excise Tax Ordinance is a tax on the use and enjoyment of a municipal service, namely, City's wastewater collection and treatment system.

¶ 4 Association is a not-for-profit Oklahoma corporation that represents the interests of for-profit business entities, specifically those engaged in constructing new homes within Norman that exceed 1,200 square feet in size. Association challenges the residential component of the Excise Tax Ordinance, claiming it is illegal and void under state and federal law. Association argues the Excise Tax Ordinance is not a true excise tax but an *ad valorem* tax on real property and thus unconstitutional and invalid. In granting City's motion for summary judgment, the trial court held City has the power to enact and levy such a tax; the tax is not against real property; and it is rationally related to the furtherance of a legitimate municipal goal.

■ ¶ 5 Whether summary judgment was properly entered is a question of law we review *de novo. Manley v. Brown,* 1999 OK 79, ¶ 22, 989 P.2d 448, 455. In a *de novo* review, we have plenary, independent, and non-deferential authority to determine whether the trial court erred in its application of the law and whether a dispute exists as to any genuine issue of material fact. *Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. Like the trial court, we examine the pleadings and summary judgment evidentiary materials submitted by the parties to determine if a genuine issue of material fact is in dispute. *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. In so doing, we view the facts and all reasonable inferences arising therefrom in the light most favorable to the non-moving party. *Id.*

■ ¶ 6 Under Oklahoma law, there is a presumption in favor of the validity and con-

stitutionality of a municipal ordinance. *See City of Tulsa By and Through Tulsa Airport Auth. v. Air Tulsa, Inc.,* 1992 OK 146, ¶ 9, 851 P.2d 519, 522; *McFall v. City of Shawnee,* 1976 OK 185, ¶ 14, 559 P.2d 433, 437. "The declaration in a statute that the tax is of a particular nature, while not conclusive, is very important and must be given consideration in construing the statute." *In re City of Enid,* 1945 OK 135, ¶ 10, 158 P.2d 348, 351, *citing Lutz v. Arnold,* 208 Ind. 480, 193 N.E. 840, 844.

¶ 7 Association argues City did not have the power to enact or levy the Excise Tax Ordinance. Article 10, § 20 of Oklahoma's Constitution provides "[t]he Legislature shall not impose taxes for the purpose of any county, city, or town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes." The Oklahoma Legislature has granted municipalities the power to tax, to-wit:

A. Any incorporated city or town in this state is hereby authorized to assess, levy, and collect taxes for general and special purposes of municipal government as the Legislature may levy and collect for purposes of state government except ad valorem property taxes. Provided:

1. Taxes shall be uniform upon the same class of subjects, and any tax, charge or fee levied upon or measured by income or receipts from sale of products or services shall be uniform upon all classes of taxpayers; . . .

68 O.S.2001 § 2701(A). The Legislature further has provided:

Any taxes which may be levied by an incorporated city or town as authorized by this act shall not become valid until the ordinance setting the rate of such tax shall have been approved by a majority vote of the registered voters of such incorporated city or town voting on such question at a general or special municipal election and no ordinance shall be resubmitted for ratification within six (6) months following its defeat by the electors.

68 O.S.2001 § 2705. These provisions permit Oklahoma municipalities to assess, levy, and collect taxes for general and special purposes of municipal government as long as such taxes do not constitute *ad valorem* taxes, are uniform upon the same class of subjects, and are approved by majority vote.[2]

¶ 8 Because City levies the Excise Tax Ordinance when it issues a building permit, Association argues the tax is properly classified as an *ad valorem* tax upon property and is thus invalid under Oklahoma law. Even if the adoption of the Excise Tax Ordinance were a proper exercise of City's taxing power, Association maintains the portion of the Ordinance that imposes, in addition to the $850 base fee, a tax of $2 per square foot for each square foot over 1,200 square feet of new construction, is impermissible because it is not uniform as to all taxpayers.

¶ 9 An *ad valorem* tax is defined as: According to value. A tax imposed on the value of property. The more common ad valorem tax is that imposed by states, counties, and cities on real estate. Ad valorem taxes, can, however be imposed upon personal property; *e.g.,* a motor vehicle tax may be imposed upon the value of an automobile and is therefore deductible as a tax. A tax levied on property or an article of commerce in proportion to its value, as determined by assessment or appraisal. *Callaway v. City of Overland Park,* 211 Kan. 646, 508 P.2d 902, 907 (Kan.1973).

Duties are either *ad valorem* or *specific;* the former when the duty is laid in the form of a percentage on the value of the property the latter where it is imposed as a fixed sum on each article of a class without regard to its value.

BLACK'S LAW DICTIONARY 51 (6th ed.1990). Under Oklahoma law, real property for *ad valorem* taxation purposes is assessed annually at its fair cash value, which is estimated at the price it would bring at a fair voluntary sale for either (1) the highest and best use for which it was actually used during the

---

**2.** Association concedes a majority of City's participating voters approved the Excise Tax Ordinance.

preceding calendar year; or (2) the highest and best use for which it was last classified if not actually used during the preceding calendar year. 68 O.S.2001 § 2817(B)(1), (2).[3]

■ ¶ 10 An excise tax, on the other hand, is "[a] tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege." *Id.* at 563, 193 N.E. 840. Distinguishing between the two types of taxes, the Supreme Court has held:

> [A] "property tax" is levied directly on the property itself; ... the necessity of paying such a tax falls upon the owner of a particular property merely because he is the owner, regardless of the use or disposition made of the property; ... an "excise tax" is a tax imposed on performance of an act, engaging in an occupation, or enjoyment of a privilege; ... the obligation to pay an "excise tax" is based upon voluntary action of the person taxed in performing the act, engaging in the occupation, or enjoying the privilege, which is the subject of the excise, and the element of absolute and unavoidable demand, as in the case of a "property tax," is lacking.

*Scott–Rice Co. v. Oklahoma Tax Comm'n,* 1972 OK 75, ¶ 14, 503 P.2d 208, 211, *citing In re City of Enid,* 1945 OK 135, 158 P.2d 348.

■ ¶ 11 City's Excise Tax Ordinance imposes a tax based on the square footage of proposed residential construction, not a percentage of the fair value of the underlying real property. Indeed, the Excise Tax Ordinance does not even provide a method for property valuation. City does not impose the tax annually, or at any other recurring interval, on the same piece of property as it typically would do were the tax *ad valorem* in nature. Rather, the Excise Tax Ordinance comes into play based only on the occurrence of a single event, namely, the property owner's application for a permit to build a residence that will be served by City's wastewater system. City does not levy the tax "upon the owner of a particular property merely because he is the owner, regardless of the use or disposition made of the property," *Scott–Rice Co., supra.* Rather, it is by engaging in the voluntary—and entirely avoidable—act of applying for a residential con-

struction permit that Association's members incur the one-time obligation to pay the tax. Indeed, property owners who do not plan to construct wastewater-dependant buildings on their land are not obligated to pay the tax at all. Accordingly, and as its title implies, the Excise Tax Ordinance imposes just that: an excise tax upon a particular use of property. Adoption of the Excise Tax Ordinance was thus a valid exercise of City's taxing power.

¶ 12 Association urges that 68 O.S.2001 § 2806 prevents us from construing the Excise Tax Ordinance as anything but an *ad valorem* tax. Section 2806 provides "[r]eal property, for the purpose of ad valorem taxation, shall be construed to mean the land itself, and all rights and privileges thereto belonging or in any wise appertaining ... and all buildings, structures and improvements or other fixtures ... of whatsoever kind thereupon...." We agree with the trial court, this provision plainly applies only to existing buildings, structures, and improvements, and not to permits for proposed construction.

■ ¶ 13 Association further insists 68 O.S.2001 § 2601 prescribes the only way in which City is permitted to levy a tax on a utility. Section 2601 allows municipalities to assess an annual tax on suppliers of power, light, heat, gas, electricity and water of up to 2% of gross receipts from suppliers' residential and commercial sales. *See* 68 O.S.2001 § 2602. Such tax is "in lieu of any other franchise, license, occupation or excise tax, levied by such city or town." 68 O.S.2001 § 2601. We are unpersuaded by Association's argument that by permitting it to tax utility sales within the community, the Legislature meant to prohibit City from levying a tax against home builders to support future expansion of and improvements to City's wastewater system. In any event, § 2601 applies to suppliers of water, not to users of the municipal wastewater system.

¶ 14 Association's final argument is 68 O.S. 2001 § 1411, which permits municipalities to levy, in addition to sales tax, an excise tax on "the storage, use or other consumption of

---

3. Subsequent amendments to 68 O.S. § 2817 are    not implicated in the case at bar.

tangible personal property used, stored or consumed within the county or municipality." Association maintains that because there is no language within § 1411 granting City the power to impose an excise tax against real property to support the provision of municipal services, it necessarily limits City's excise taxing power to use, consumption, and storage of personal property only. Such is plainly not the law. Accordingly, Association's argument in this regard is without merit.

¶ 15 Association next argues the Excise Tax Ordinance is illegal because it violates equal protection guarantees under federal and state law. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandates no state "deny to any person within its jurisdiction the equal protection of the laws." Likewise, Article 2, section 7 of the Oklahoma Constitution declares, "[n]o person shall be deprived of life, liberty or property without due process of law." "Although not an absolute guarantee of equality of operation or application of state legislation, the Equal Protection Clause is intended to safeguard the quality of governmental treatment against arbitrary discrimination." *Gladstone v. Bartlesville Ind. Sch. Dist. No. 30*, 2003 OK 30, ¶ 9, 66 P.3d 442, 446.

¶ 16 Association bases its equal-protection argument on the conclusion of City's engineering consulting firm that the estimated cost for all sewer collection system and treatment plant improvements would be $1,713 per new single-family home. According to Association's calculations, builders who wish to construct new homes larger than 1,631.5 square feet will be forced to carry more than their fair share of the financial burden for wastewater improvement.[4] Association argues this classification is not rationally related to any legitimate municipal

purpose and violates the uniformity requirements of 68 O.S.2001 § 2701(A)(1).

¶ 17 Because Association does not claim the Excise Tax Ordinance's alleged disproportionate taxation of builders of homes greater than 1631.5 square feet involves a fundamental right or was made along suspect lines, we accord the classification a strong presumption of validity. *See Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 2646, 125 L.Ed.2d 257 (1993). Indeed, we will uphold economic legislation "which is not *drawn upon suspect classifications or impinges upon anyone's fundamental rights* . . . against an equal protection attack when the legislative means are *rationally related to a legitimate governmental purpose.*" *Gladstone*, ¶ 9, 66 P.3d at 446 (emphasis in original). Rational-basis scrutiny is a highly deferential standard under which a statutory classification is constitutional if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.*, ¶ 12, 66 P.3d at 447, *citing F.C.C. v. Beach Communciations, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993).

> The rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." For these reasons, legislative bodies are generally "presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality."

*Gladstone*, ¶ 12, 66 P.3d at 447. "Making classifications is at the heart of the legislative function. In the economic sphere, *it is only the invidious discrimination*—the purely arbitrary act that cannot stand in harmony with the federal and state equal rights guarantee—which will doom legislation." *Id.*, ¶ 18, 66 P.3d at 449.

4. Pursuant to the Excise Tax Ordinance, the owner of a 1,631.5 square-foot home would have to pay a total of $1,731 in order to receive a construction permit to build a new residence. The figure is arrived at by calculating the number of square feet over 1,200 (1631.5–1,200 = 431.5), multiplying it by $2 per square foot (431.5 × $2 = $863) and adding that sum to the $850 base charge for the original 1,200 square feet ($863 + $850 = $1,731). Given that $1,731 is the amount City's engineering consultants estimated each new home would cost City in wastewater collection and treatment improvements, Association concludes that any new home over 1,631.5 square feet in size would be forced to pay more than $1,731 in taxes, which is greater than its actual project impact on the system.

¶ 18 For example, the plaintiff in *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City*, 1995 OK 62, 901 P.2d 800, challenged a municipal tax ordinance that gave those Oklahoma City residents sixty-five years of age or over, the right to a refund of all or part of a sales tax specifically targeted to fund certain downtown revitalization projects. The plaintiff argued that the refund provision violated the uniformity mandate of § 2701(A) because it created a two-tiered taxation system, with those younger than sixty-five taxed at a higher rate. In upholding the refund provision, the Supreme Court found "[t]he language of § 2701(A) demonstrates a legislative intent to allow municipalities to create classes of taxpayers . . . . for the purpose of the levy and collection of a municipal sales taxes." *Id.*, ¶ 10, 901 P.2d at 804–05. The Supreme Court dismissed plaintiff's argument that municipalities must impose taxes uniformly upon all taxpayers, holding instead that municipal taxes need be uniform only as to each individual *class* of taxpayer. "Legislators are given especially broad latitude in creating classification and distinctions in tax statutes. Unless a classification jeopardizes the exercise of a fundamental right or it makes a classification on an inherently suspect characteristic, a classification which rationally furthers a legitimate state interest will withstand an equal protection challenge." *Id.*, ¶ 14, 901 P.2d at 805–06.

¶ 19 Consistent with *Oklahoma Ass'n for Equitable Taxation*, City may create classes of taxpayers for the purpose of financing improvements to its wastewater collection system and treatment facility without running afoul of either equal protection or the uniformity provision of § 2701(A) as long as there is a rational basis for the classification. As stated in the preamble to the Excise Tax Ordinance, "there are a number of vacant lots in approved subdivisions and further subdivisions, either platted or soon to be platted, the development of which will impose an increased demand on the City's wastewater system." In light of this fact, City concluded "the costs of future improvements and expansion of its wastewater system should be borne by the users whose demand has created the need for future expansion and im-

provements" and "that it is necessary to adopt the provisions of this excise tax for the imposition of appropriate costs on such lots and future development."

¶ 20 "The Equal Protection Clause does not, for purposes of rational-basis review, demand that a legislature actually articulate the purpose or the rationale that supports its classification." *Gladstone*, ¶ 15, 66 P.3d at 448. Rather, a statutory classification will survive rational-basis constitutional scrutiny if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.*, ¶ 12, 66 P.3d at 447. City's Excise Tax Ordinance passes constitutional muster.

¶ 21 The Excise Tax Ordinance is a valid exercise of City's taxing power under Oklahoma Law. It violates neither the equal protection provisions of the federal or state constitutions nor the unanimity requirement of 68 O.S.2001 § 2701(A)(1).

¶ 22 AFFIRMED.

HANSEN, J., and JONES, J., concur.